IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:21cr330-MHT |
| | ) | (WO) |
| BRANDON KYLE JOHNSON | ) | |

## OPINION

Defendant Brandon Kyle Johnson pled guilty to one count of possession with intent to distribute a controlled substance, namely 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). In December 2019, after he lost control of his car while fleeing from a police officer, 163.8 grams of methamphetamine, including 162.9 grams of high-purity methamphetamine, or "ice," were recovered from his car.

Johnson's offense carried a 10-year mandatory-minimum sentence under 21 U.S.C. § 841(b)(1)(A)(viii). Because he had at least two prior convictions of controlled substance offenses, he qualified for "career offender" status under § 4B1.1 of the United States Sentencing Guidelines Manual (hereinafter "U.S.S.G.") and faced a guidelines range

of 262 to 327 months of imprisonment. He moved for a downward variance to the statutory mandatory minimum. In support of his request, he raised policy objections to the career-offender and methamphetamine guidelines as applied in his case and further argued that his personal history and characteristics, most notably his experience of largely untreated substance-abuse and mental-health issues, mitigated his culpability.

As orally explained at his sentencing and memorialized below, the court granted Johnson's motion for a downward variance. Taking into consideration its prior decisions in *United States v. Dixon*, No. 2:16cr16-MHT, 2016 WL 4492843 (M.D. Ala. Aug. 5, 2016) (Thompson, J.), and *United States v. Johnson*, 379 F. Supp. 3d 1213 (M.D. Ala. 2019) (Thompson, J.), the court determined that the career-offender and methamphetamine guidelines failed to reflect adequately the 18 U.S.C. § 3553(a) sentencing factors in his case. Applying those factors, the court sentenced him to 120

2

months of imprisonment, to be followed by five years of
supervised release.

## I.   Background

In December 2019, a detective of the Troy Police
Department observed Johnson driving in a residential
area.   Because the detective had knowledge of a
misdemeanor warrant for Johnson's arrest, he activated
his siren and lights and pursued Johnson.   Johnson
accelerated and, over the course of a couple minutes,
fled from the detective at speeds that reached as high
as 90 miles per hour.   At least once, Johnson slowed
down, driving approximately 35 miles per hour as he
approached and passed a school bus, but he
reaccelerated thereafter.   Ultimately, Johnson lost
control of his car and slid into a ditch, where the car
flipped over.   Searches of Johnson's car and person
recovered small plastic bags, a set of digital scales,

3

and 163.8 grams of methamphetamine, including 162.9 grams with a purity of 94 %.

Prior to this offense, Johnson had the following state convictions: two counts of possession of a controlled substance, one count of possession of drug paraphernalia, one count of trafficking in illegal drugs (morphine), two counts of first-degree manufacturing of a controlled substance, one count of trafficking in methamphetamine, two counts of unlawful distribution of a controlled substance, and one count of second-degree possession of marijuana. These state convictions, which resulted in three separate arrests, stemmed from conduct occurring between December 2007 and February 2009. Additionally, in October 2017, Johnson was arrested and charged with additional state offenses: possession of a controlled substance, possession of drug paraphernalia, obstructing government operations, carrying a concealed weapon, and resisting arrest. And roughly one month prior to the

4

instant federal offense, Johnson was charged with the state offenses of reckless driving and attempting to elude, based on his high-speed flight in a car.

In the instant case, the parties entered a nonbinding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(A) and (B). Johnson agreed to plead guilty to possession with intent to distribute methamphetamine; the government agreed to recommend a sentence at the bottom of the applicable Guidelines range and not to file an information under 21 U.S.C. § 851.

With respect to Johnson's personal characteristics, the PSR and a psychological evaluation by Dr. Catherine Boyer observed that, while in high school in 2004, Johnson was a passenger in a car accident. In addition to suffering fractures to his skull and vertebrae, Johnson required surgery to remove one of his ankles, leaving him wheelchair bound and unable to walk for at least six months. Following the accident, he became

addicted to the pain medications that he was prescribed, and he soon developed an addiction to methamphetamine. Dr. Boyer found that he also experienced symptoms of posttraumatic stress disorder (PTSD) and depression. She further stated that there were "indications for executive functioning deficits" in light of Johnson's skull fracture and behavioral changes observed after the accident, although she recommended a more comprehensive follow-up neuropsychological evaluation. Psychological Evaluation (Doc. 49-1) at 14. As Dr. Boyer opined, the combination of "the lengthy period of time over which pain medications were prescribed," Johnson's "unresolved pain issues," "the lack of referral to a pain management specialist," his "untreated depression and PTSD symptoms," and his "apparent impairment in executive functions such as impulse control and decision making" left him "particularly vulnerable to addiction." *Id.* Physical pain, depression, and trauma

6

symptoms "fueled" his drug addiction, which "then compounded his impaired decision making and impulse control." *Id.*


## II. Discussion

Probation recommended, and the government argued, that Johnson should be sentenced to a Guidelines-minimum sentence of 262 months of imprisonment. Johnson moved for a downward variance based on (1) his personal history and characteristics, including the role that drug addiction and mental-health issues played in his criminal conduct; (2) policy disagreements with the career-offender guideline as to its uniform treatment of defendants with wide-ranging criminal histories; and (3) policy disagreements with the methamphetamine guidelines as to their emphasis on drug purity and drug quantity. The government opposed a variance, arguing that (1) Johnson's drug addiction did not explain or mitigate

the extent of his involvement in drug distribution; (2) per the PSR, several of the searches that led to his prior state arrests and convictions for drug offenses also recovered firearms; and (3) his high-speed flight from police officers in a car in the instant offense and on at least one prior occasion endangered others.

## A. Legal Standard

A district court has considerable discretion in determining an appropriate sentence, so long as the sentence is reasonable. *See United States v. Irey*, 612 F.3d 1160, 1188-89 (11th Cir. 2010) (en banc); *United States v. Crawford*, 407 F.3d 1174, 1179 (11th Cir. 2005). The court must consider the proper factors, set out in 18 U.S.C. § 3553(a), including the recommended sentencing range under the Sentencing Guidelines and any pertinent policy statements, *see* § 3553(a)(4)-(5). However, the Guidelines are only "one factor among several courts must consider in determining an

appropriate sentence." *Kimbrough v. United States*, 552 U.S. 85, 90 (2007).    "While Guidelines sentences generally should approximate the § 3553(a) factors," *Dixon*, 2016 WL 4492843, at *2, a variance may be appropriate where "the case at hand falls outside the 'heartland' to which the [United States Sentencing Commission] intends individual Guidelines to apply" or where "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations," *Rita v. United States*, 551 U.S. 338, 351 (2007).

## B. Application

In determining Johnson's sentence, the court began "by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Neither party objected to Probation's calculation of the Guidelines range in the PSR, and the court agrees that it reflects the correct application of the Guidelines to Johnson's case.

Based on the methamphetamine guidelines' treatment of one gram of methamphetamine mixture as two kilograms of converted drug weight and one gram of "ice" as 20 kilograms of converted drug weight, *see* U.S.S.G. § 2D1.1(c); U.S.S.G. § 2D1.1 cmt. n.8(D), the 162.9 grams of "ice" for which Johnson is responsible amounted to 3,258 kilograms of converted drug weight, and the other 0.9 grams of methamphetamine mixture added 1.8 kilograms.  Johnson's total converted drug weight of 3,259.8 kilograms yielded a base offense level of 32.  Johnson's dangerous high-speed flight added two levels to his offense level, *see* U.S.S.G. § 3C1.2 ("Reckless Endangerment During Flight"), while his acceptance of responsibility subtracted three, *see* U.S.S.G. § 3E1.1.  This calculation would produce a total offense level of 31.  Additionally, Johnson's nine criminal history points would result in a criminal history category of IV.  Based on these determinations,

Johnson's Guidelines range would have been 151-188 months of imprisonment.

However, Johnson met the criteria for "career offender" status, which requires that "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Because Johnson's otherwise applicable offense level of 31 was less than the offense level of 34 that resulted from application of U.S.S.G. § 4B1.1 and the acceptance-of-responsibility adjustment, the higher offense level of 34 controlled. *See* U.S.S.G. § 4B1.1(b). Similarly, the career-offender guideline increased Johnson's criminal history category from IV to VI. *See id.* The

11

application of the career-offender guideline increased Johnson's Guidelines range by nearly 10 years at the low end, up to 262-327 months.

Starting from the Guidelines range of 262-327 months, the court found that this range overstated Johnson's culpability and concluded that a downward variance was warranted. Even the minimum of this range, 262 months or nearly 22 years, was far more severe than necessary to punish him for his offense. The recommended range gave no weight to the role that drug addiction and mental-health issues played in his criminal conduct in the instant offense and his prior convictions. It also failed to draw an appropriate distinction between Johnson, who has never been convicted of a crime of violence, and far more dangerous offenders who have been sentenced under the same career-offender guideline. As a result, the Guidelines range did not reflect appropriately his

history and characteristics, his need for treatment, and his potential for rehabilitation.

Having determined that a variance was appropriate, the court calculated the appropriate sentence as follows. First, consistent with its approach in *Dixon*, the court looked to the sentencing range that the Guidelines would have recommended absent the career-offender enhancement: 151-188 months, based on an offense level of 31 and a criminal history category of IV. *Cf. Dixon*, 2016 WL 4492843, at *6.

Second, for the reasons articulated in *Johnson*, the court varied further downward due to the methamphetamine guidelines' overemphasis on drug purity and quantity and the flawed assumptions underlying the use of either as a proxy for culpability. *See Johnson*, 379 F. Supp. 3d at 1220-26. In *Johnson*, the court implemented a downward variance in two steps, first "re-calculating the base-offense level by using the methamphetamine-mixture guideline, instead of the

actual methamphetamine Guideline," and second "reduc[ing] the offense level by an additional two levels." *Id.* at 1229. Applying that approach here, the court recalculated Johnson's converted drug weight to be 327.6 kilograms--163.8 grams of methamphetamine, multiplied by the conversion ratio of two kilograms of converted drug weight per one gram of methamphetamine mixture. This yielded a base offense level of 24, which the court further reduced by two levels to 22. After applying the adjustments for reckless endangerment during flight and acceptance of responsibility, Johnson's modified offense level was 21, which would result in a recommended Guidelines range of 57-71 months.

Next, the court considered aggravating and mitigating factors that it found were not reflected fully in this sentencing range. The court was troubled by Johnson's conduct in fleeing from the police by driving at high speeds on a major road with other cars

in the vicinity.  The PSR reported that he engaged in such flight not only in the instant offense, but also roughly a month prior.  To a lesser extent, the court also considered his past firearm possession.  In particular, the court took into account the PSR's report that he had been arrested in 2017 on a charge of carrying a concealed weapon, based on his possession of a firearm, along with methamphetamine, in his car. Based on this conduct, the court increased his offense level by four levels, on top of the two-level increase already applied under U.S.S.G. § 3C1.2, to 25, with a corresponding Guidelines range of 84-105 months.

Additionally, although the court disagreed with the application of the Guidelines' full career-offender enhancement, the court increased Johnson's sentencing range in light of Johnson's pattern of involvement in drug-distribution offenses.  In *Dixon*, the court described such an increase as effectively treating a defendant as a "low-level career offender."  *Dixon*,

15

2016 WL 4492843, at *6.  The court increased Johnson's sentencing range by 20 months, up to 104-125 months.

Finally, the court took note of Johnson's personal history, including his psychological evaluation by Dr. Boyer.  As discussed above, Dr. Boyer's evaluation explained that "Johnson's severe injuries from his 2004 accident led to serious cognitive, physical, and emotional consequences."  Psychological Evaluation (Doc. 49-1) at 14.  These consequences included PTSD symptoms and an "apparent impairment in executive functions such as impulse control and decision making." *Id.*  Dr. Boyer's evaluation further indicated a circular relationship between his mental-health and potential cognitive issues and his substance abuse, with the former rendering him "particularly vulnerable to addiction" and the latter, in turn, "compound[ing] his impaired decision making and impulse control."  *Id.*

To the extent Johnson's PTSD symptoms, drug addiction, and potential cognitive impairments

16

contributed to impaired decision making and impulse control, the court found that they carried mitigating weight with respect to his criminal conduct. In addition, the court notes that he told Dr. Boyer that he "sold drugs as a way [to] fund his own use," *id.* at 8, which suggests a further connection between his drug addiction and the specific criminal conduct, drug distribution, in which he was involved. The court credits Johnson's statement but finds that it is not fully mitigating; his own drug addiction does not mitigate completely the full extent of his involvement in drug-distribution activities as reported in the PSR.

Beyond the mitigating weight identified above, the court was also concerned that Johnson appeared not to have received any mental-health treatment and to have received at most minimal substance-abuse treatment since his accident in 2004. The limitations of past efforts to treat his mental-health and substance-abuse issues, including during his sentences for the 2007,

17

2008, and 2009 offenses that make up the entirety of his criminal history score and career-offender status, reinforced the importance that his need for such treatment should carry under 18 U.S.C. § 3553(a)(2)(D). In sum, considering Dr. Boyer's evaluation as a reflection of the mitigating weight of Johnson's mental-health and substance-abuse issues and his still unaddressed need for treatment, the court concluded that a further downward variance of 20 months was warranted. This produced a final sentencing range of 84 to 105 months.

Because the sentencing range at which the court arrived was below the statutory mandatory-minimum sentence of 120 months, *see* 21 U.S.C. § 841(b)(1)(A)(viii), the court sentenced Johnson to 120 months of imprisonment, to be followed by five years of supervised release.

DONE, this the 29th day of July, 2022.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

18